UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUZANNE O., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01043-RLY-TAB |
| ) | |
| ANDREW M. SAUL Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff Suzanne O. appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge failed to: (1) provide sufficient accommodations for Plaintiff's moderate limitations found in step three in assessing the paragraph B criteria; (2) discuss the paragraph C criteria of Listings 12.03, 12.04, 12.06, at 12.15; (3) consider Plaintiff's non-severe impairments in her residual functional capacity; (4) sufficiently articulate whether Plaintiff met or equaled a listing; (5) consider Plaintiff's absences or time off task in the RFC; and (6) give proper weight to treating source opinions or Plaintiff's mother's statement. [Filing No. 20, at ECF p. 19.] As explained below, the ALJ provided sufficient accommodations for Plaintiff's moderate limitations related to the paragraph B criteria and considered Plaintiff's non-severe impairments in her RFC. However, the ALJ did not properly address all the evidence in the record relating to the paragraph C criteria of various listings or Plaintiff's absenteeism and time off task. The analysis of the

treating source opinions is also lacking. Accordingly, Plaintiff's request for remand [Filing No. 20] should be granted.

## II.     Background

On July 21, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. The SSA denied her claim initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled at the time of the decision. First, the ALJ noted that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2015. Next, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 15, 2009, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: schizoaffective disorder, depressive type, history of psychosis and delusional disorder, depression, major depressive disorder with psychotic features, anxiety with history of panic attacks, post-traumatic stress disorder, and obsessive compulsive disorder. [Filing No. 14-2, at ECF p. 19.] The ALJ found that these medically determinable impairments significantly limited Plaintiff's ability to perform basic work activities as required by SSR 85-28.

Additionally, the ALJ noted that Plaintiff had the following non-severe impairments which the ALJ found had no more than a minimal effect on her ability to perform basic work activities: rosacea, chronic dermatitis, history of back strain with pain, obesity, asthma, allergic rhinitis, costochondritis, dysmenorrhea, and history of mononucleosis. [Filing No. 14-2, at ECF p. 19.] The ALJ also referenced a possible diagnosis of attention deficit disorder but found this diagnosis unconfirmed in the record and insufficient evidence to establish this condition as a medically determinable impairment. [Filing No. 14-2, at ECF p. 19.]

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ concluded that the "paragraph B" and "paragraph C" criteria were not satisfied. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to function despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following non-exertional limitations:

> [Plaintiff] is limited to simple, routine, tangible, and repetitive work, in a work environment free of fast-paced production requirements. [Plaintiff] must perform no production rate or pace work. [Plaintiff] is limited to work with no interaction with the public, only occasional and superficial interaction with co-workers, and no tandem tasks with coworkers. [Plaintiff] is limited to work with only occasional interaction with supervisors and no tandem tasks with supervisors.

[Filing No. 14-2, at ECF p. 21.]

The ALJ concluded at step four that Plaintiff has no past relevant work. [Filing No. 14-2, at ECF p. 26.] The ALJ also noted that on the alleged disability onset date, Plaintiff was 27 years old (a younger individual), had at least a high school education, and was able to communicate in English. In addition, the ALJ found that transferability of job skills would not be an issue since Plaintiff did not have past relevant work. Finally, at step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as: mail clerk, office machine operator, and housekeeper cleaner. [Filing No. 14-2, at ECF p. 27.] Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III. Discussion

Plaintiff raises multiple issues with the ALJ's decision, arguing that the ALJ erred: (1) by failing to provide sufficient accommodations in the RFC for Plaintiff's moderate limitations found in step three; (2) by failing to discuss the paragraph C criteria of Listings 12.03, 12.04, 12.06, at 12.15; (3) by failing to consider Plaintiff's non-severe impairments in her RFC; (4) by failing to sufficiently articulate whether Plaintiff met or equaled a listing; (5) by failing to consider Plaintiff's absences or time off task in the RFC; and (6) by failing to give proper weight to treating source opinions and Plaintiff's mother's statement. [Filing No. 20, at ECF p. 19.]

The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __. __. 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).  Thus, the Court will reverse "only if the record compels a contrary result." *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (internal citation and quotation marks omitted).

### A. Accommodations for moderate limitations

First, Plaintiff argues that the ALJ erred at step four by failing to provide sufficient accommodations in the RFC for Plaintiff's mild and moderate limitations in three of four functional areas, also known as the paragraph B criteria for mental functioning. [Filing No. 20, at ECF p. 19.] As noted in the ALJ's decision, "[t]o satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." [Filing No. 14-2, at ECF p. 20.] The ALJ found Plaintiff had a mild limitation in understanding, remembering, or applying information, and moderate limitations in the other three areas. [Filing No. 14-2, at ECF p. 20.]

Plaintiff contends that the ALJ failed to discuss which functional limitations, if any, were considered by the ALJ in assessing Plaintiff's RFC. [Filing No. 20, at ECF p. 19.] "[T]he ALJ must account for the totality of a claimant's limitations in determining the proper RFC." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (internal citation and quotation marks omitted). *See also Taylor v. Berryhill*, 387 F. Supp. 3d 883, 890 (N.D. Ill. 2019) ("To be sure, in determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." (Internal citation, quotation marks, and brackets omitted)). Here, the ALJ noted in her decision:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual

5

>    functional capacity assessment reflects the degree of limitation the undersigned
>    has found in the "paragraph B" mental functional analysis.

[Filing No. 14-2, at ECF p. 21.]

Plaintiff's claim that the ALJ provided no discussion of how she provided for these limitations in her RFC is not accurate. First, the RFC contains various non-exertional limitations, including limiting Plaintiff to simple, routine, tangible and repetitive work; no face-paced productive requirements or pace work; no interaction with the public; only occasional and superficial interaction with co-workers, and no tandem tasks with co-workers; and only occasional interaction with supervisors and no tandem tasks with supervisors. [Filing No. 14-2, at ECF p. 21.] The ALJ stated that these restrictions "factor the claimant's psychological disorders." [Filing No. 14-2, at ECF p. 21.] The ALJ then supported this statement, citing to treatment records documenting no considerable deficiency in executive function and Plaintiff's daily activities that show adequate cognitive function; adequate interaction with others; adequate adapting and managing one's self; and sustained attention, persistence, and pace. [Filing No. 14-2, at ECF p. 21.]

In addition, the ALJ addressed the lack of record evidence of considerable social dysfunction, noting that while Plaintiff testified to some difficulty interacting with supervisors with regard to work schedules, she denied any history of termination from employment due to problems with getting along with others in the workplace. [Filing No. 14-2, at ECF p. 21-22.] In addition, the ALJ noted Plaintiff socializes with friends and visits craft stores. [Filing No. 14-2, at ECF p. 22.] Overall, the ALJ found that the evidence established that Plaintiff could maintain appropriate social interaction in the workplace with the restrictions the ALJ provided in the RFC.

The ALJ did not address the paragraph B criteria directly at this point in her decision, but the overall decision reflects that the ALJ generally took those limitations into consideration in

6

assessing Plaintiff's RFC.  Although the ALJ must base her decision on all of the relevant evidence in the record, she need not specifically address every single piece of evidence or testimony.  *See, e.g., Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) ("In rendering a decision, an ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." (Internal citation and quotation marks omitted)).   Plaintiff has not shown that the ALJ's analysis and resulting RFC failed to accommodate Plaintiff's paragraph B limitations or otherwise build a logical bridge from that evidence to the conclusion.

      **B.**        **Paragraph C criteria**

Plaintiff's next argument, however, is more availing.  Plaintiff claims that the ALJ failed to discuss the paragraph C criteria of Listings 12.03, 12.04, 12.06, and 12.15.  [Filing No. 20, at ECF p. 28.]  The ALJ concluded that "the evidence fails to establish the presence of the 'paragraph C' criteria."  [Filing No. 14-2, at ECF p. 21.]  Specifically, the ALJ found:

> The record does not establish that [Plaintiff] has only marginal adjustment, that is a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.  Treatment notes show that [Plaintiff] has remained alert and oriented with no evidence of delusions or hallucinations.  There is no evidence of a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  [Plaintiff] independently performs daily living activities such as preparing meals, driving to work, errands and appointments, shopping online, and maintaining part-time employment.   This evidence does not satisfy the requirements of the "C" criteria.

[Filing No. 14-2, at ECF p. 21.]

As Plaintiff notes, the ALJ provided no citations to the record in this portion of her decision addressing the Paragraph C criteria.  [Filing No. 20, at ECF p. 29.]  The Commissioner argues that this is not determinative, since the ALJ's decision is meant to be read in its entirely, not piecemeal.  [Filing No. 22, at ECF p. 13.]  The Court does review the decision of an ALJ in

7

whole. *See, e.g., Rice v. Barnett*, 384 F.3d 363, 370, n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (Internal citation omitted)). However, the ALJ's analysis—regardless of where it appears in the ALJ's decision—still cannot be contrary to the record. *See, e.g., Martin*, 950 F.3d at 375 ("The ALJ's analysis strikes us as impermissible cherry-picking—highlighting facts that support a finding of non-disability while ignoring evidence to the contrary."). That is the problem here.

With respect to delusions or hallucinations, the ALJ claimed that there is no evidence of delusions of hallucinations, but Plaintiff received inpatient treatment for such behaviors in 2012. [Filing No. 14-5, at ECF p. 8.] While the ALJ noted that in 2015, Plaintiff presented to an emergency room with acute suicidal ideation but declined a psychiatric admission [Filing No. 14-2, at ECF p. 24], the ALJ ignored evidence in the treatment records from that visit indcating Plaintiff admitted to suffering from hallucinations when she met with a therapist. [Filing No. 14-7, at ECF p. 25] ("Pt. admits to auditory/visual hallucinations. Pt. presents with paranoia and preoccupations."). Thus, these and various additional treatment records indicate Plaintiff suffered from delusions and hallucinations. [Filing No. 14-6, at ECF p. 46, 48; Filing No. 14-7, at ECF p. 27.] The ALJ's decision fails to account for this evidence in the record.

Furthermore, the ALJ stated that there is no evidence Plaintiff has a current history of one or more years' inability to function outside a highly supportive living arrangement or a need to continue such an arrangement, but Plaintiff testified that she lived with her mom and had never[1]

---

[1] Plaintiff at first testified that she lived alone once when she was in her mid-20s. [Filing No. 14-2, at ECF p. 55.] However, further questioning revealed that she lived with her boyfriend rather than alone. [Filing No. 14-2, at ECF p. 56.]

lived alone. [Filing No. 14-2, at ECF p. 55-56.] Plaintiff also testified that while she knows how to cook a little bit of food[2], her mother does all the cooking, laundry, grocery shopping, and cleaning. [Filing No. 14-2, at ECF p. 56-57.] The ALJ's decision glosses over or misstates these facts.

As noted above, it is not the role of the Court to re-weigh the medical evidence, resolve conflicts, or draw conclusions on the Commissioner's behalf. See Burmester, 920 F.3d at 510. However, while an ALJ "does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her conclusion while ignoring the evidence that undermines it. The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014) (internal citations omitted). See also Deborah M. v. Saul, No. 20-2570, __ F.3d __, __, 2021 WL 1399281, at *2 (7th Cir. April 14, 2021) ("[A]n ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability."); Lanigan v. Berryhill, 865 F.3d 558, 563 (7th Cir. 2017) ("An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion."). Accordingly, this matter should be remanded so that the ALJ may acknowledge and evaluate the actual evidence in the record related to delusions, hallucinations, and Plaintiff's ability to function outside of a highly supportive living arrangement.

---

[2] The ALJ found that Plaintiff independently prepares meals and later noted that Plaintiff "is able to prepare lasagna from scratch." [Filing No. 14-2, at ECF p. 23.] However, Plaintiff testified that she knew *how* to make lasagna from scratch, not that she made it. [Filing No. 14-2, at ECF p. 57.] When asked additional clarifying questions, Plaintiff stated that she had not made lasagna at all in the past year, and that the last time she made it was "[m]aybe two or three years ago." [Filing No. 14-2, at ECF p. 67.]

C.     **Non-severe impairments**

Plaintiff maintains that the ALJ erred at step four by failing to consider Plaintiff's non-severe impairments in her RFC.  [Filing No. 20, at ECF p. 31.]  The ALJ's decision listed Plaintiff's severe impairments before noting that the record also documented other impairments that appear in the record to be non-severe, including: rosacea, chronic dermatitis, history of back strain with pain, obesity, asthma, allergic rhinitis, costochondritis, dysmenorrhea, and a history of mononucleosis.  [Filing No. 14-2, at ECF p. 19.]  Plaintiff argues that the ALJ attempted to include a "catch all" by noting: "The Administrative Law Judge finds these *and all other* medically determinable impairments appearing in the record to be nonsevere."  [Filing No. 14-2, at ECF p. 19] (emphasis added).  Thus, Plaintiff argues that since the ALJ failed to list all other medically determinable impairments appearing in the record, it stands to reason that the ALJ also did not discuss the limits those impairments impose on Plaintiff's RFC.  [Filing No. 20, at ECF p. 32.]

The Commissioner argues that the ALJ properly evaluated Plaintiff's non-severe impairments.  [Filing No. 22, at ECF p. 9.]  The Commissioner notes that after listing the non-severe impairments noted above, the ALJ elaborated:

> However, there is no objective evidence of more than minimal functional limitations secondary to these and all other medically determinable impairments appearing in the record.  Specifically, the record does not show evidence of significant skin abnormalities[,] immune system dysfunction, musculoskeletal deficits, physical deconditioning, pulmonary abnormalities, gynecological dysfunction or gastrointestinal abnormalities associated with these disorders.

[Filing No. 14-2, at ECF p. 19.]  In addition, in making Plaintiff's RFC finding, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and any other evidence" as well as opinion evidence.  [Filing No. 14-2, at ECF p. 22.]  Thus, the Commissioner argues that the ALJ

10

properly considered these impairments and explained why they provide no more than minimal functional limitations.

Plaintiff does not cite to any evidence that the ALJ ignored or cite any evidence in support of her argument that the ALJ should have included additional restrictions in the RFC to accommodate her non-severe impairments. Thus, any error is harmless. *See, e.g., Deborah M.*, __ F.3d at __, 2021 WL 1399281, at *4 ("[E]ven if the ALJ's consideration of Plaintiff's lack of treatment were wrong, Plaintiff has not shown that it caused any harm. We will only remand a case if we believe that a second proceeding might come to a different result."). Plaintiff has not shown that remand could lead to a different result on this issue as she has not pointed to anything in the record indicating that her doctors or the state agency consultants assessed any additional limitations based on her non-severe impairments that the ALJ has not already addressed.

### D. Listing met or equaled

Plaintiff also argues that the ALJ failed at step three of the evaluation process by failing to sufficiently articulate whether Plaintiff met or equaled a listing. [Filing No. 20, at ECF p. 32-33.]

> If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, a claimant is presumptively eligible for benefits. 20 C.F.R. § 404.1520(d). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing. The Listings specify the criteria for qualifying impairments. A claimant may also satisfy a Listing by showing that this impairment is accompanied by symptoms that are equal in severity to those described in the Listing.

*Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (internal citations and quotation marks omitted).

Plaintiff contends that the ALJ's discussion is deficient because, in addition to the other issues noted above, the ALJ failed to discuss the paragraph A criteria of the listings she

11

considered, or provide even one citation to the record to support her opinion in relation to the paragraph A criteria. [Filing No. 20, at ECF p. 33.] In response, the Commissioner claims that the ALJ did not discuss the paragraph A criteria of the listings she considered—Listings 12.03, 12.04, 12.06, 12.08 and 12.15—because at step two she already concluded Plaintiff had severe mental impairments, including schizoaffective disorder, history of psychosis and delusional disorder, depression, anxiety, PTSD, and OCD. Thus, the Commissioner concedes that the paragraph A criteria of each of those listings was already satisfied. [Filing No. 22, at ECF p. 12.]

Accordingly, no dispute remains that Plaintiff met the paragraph A criteria of the listings at issue. Furthermore, as noted in subsection B above, the ALJ did not provide a sufficient explanation of her reasoning or an accurate representation of the record in concluding that Plaintiff did not meet the paragraph C criteria. Therefore, on remand, the ALJ should reevaluate whether Plaintiff met or equaled these listings and provide a thoughtful, accurate analysis of the evidence she considered in reaching her decision.

### E.     Absences or time off task

Next, Plaintiff contends that the ALJ erred at step four by failing to consider Plaintiff's absences or time off task in the RFC. [Filing No. 20, at ECF p. 34.] The Commissioner, on the other hand, argues that the ALJ is only required to include restrictions proven on the record and need not include restrictions lacking evidentiary support. [Filing No. 22, at ECF p. 19.] Furthermore, the Commissioner contends that the ALJ found the medical evidence Plaintiff cites in support of this claim—treating doctors Dr. Sanjay Mishra, Dr. Michael Nichols, and Karen McNeely, LCSW—unpersuasive on the topic of absenteeism or time off from work. [Filing No. 22, at ECF p. 20.]

The ALJ gave only little weight to the opinions of Plaintiff's treating physicians after finding them to be "inconsistent with the evidence of record, which documents no clinical manifestations of considerable deficiency in executive function, thought process, or social function." [Filing No. 14-2, at ECF p. 25.] This issue is addressed further below. However, Plaintiff also points to statements from the state agency medical consultants that noted limitations with respect to absenteeism, punctuality, and need for time off task or rest periods. [Filing No. 20, at ECF p. 26-27; Filing No. 23, at ECF p. 15.] The ALJ gave partial weight to the opinions of state agency medical consultants and noted that the consultants opined that Plaintiff "has moderate limitation in her capacity to carry out detailed instructions and maintain attention and concentration for extended periods." [Filing No. 14-2, at ECF p. 25.] The ALJ found the consultants' assessments to be "congruent with the results of mental status testing, which document no abnormality in executive function or significant impairment in social interaction." [Filing No. 14-2, at ECF p. 25.] Nevertheless, the ALJ also claimed to impose "greater" restrictions than those recommended by the consultants in light of Plaintiff's subjective reports of anxiety and difficulty with concentration. [Filing No. 14-2, at ECF p. 25.]

State agency medical consultants Randal Horton and William Shipley found initially and on reconsideration that Plaintiff was moderately limited in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Filing No. 14-2, at ECF p. 162, 173, 190, 206.] The consultants also opined that Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintaining regular attendance, and be punctual within

customary tolerances; complete a normal workday or workweek without interruptions; and respond appropriately to changes in the work setting.  [Filing No. 14-2, at ECF p. 161-62; 205.]

While the ALJ briefly mentioned portions of the state agency consultants' opinions, the ALJ made no reference to absenteeism or time off task in the RFC and did not provide any explanation in her decision as to why she did not address such concerns in the RFC.  Instead, the ALJ concluded that "[t]he consultants' assessments are congruent with the results of mental status testing, which document no abnormality in executive function or significant impairment in social interaction."  [Filing No. 14-2, at ECF p. 25.]  This reasoning does not add any clarification to why the ALJ ignored the consultants' finding of moderate limitations for absenteeism or time off task.

The ALJ also claimed to impose "greater" restrictions in light of Plaintiff's subjective reports of anxiety and difficulty with concentration.  [Filing No. 14-2, at ECF p. 25.]  However, those purportedly greater restrictions do not account for potential absenteeism.  The Commissioner argues that the ALJ "was not required to include restrictions that lacked support from the record; she was only required to include restrictions proven on the record."  [Filing No. 22, at ECF p. 19.]  This argument seems to be that the Court can infer from the ALJ's decision that the ALJ decided the evidence related to absenteeism or time off task was not credible.  *See, e.g., Misener v. Astrue*, 926 F. Supp. 2d 1016, 1036 (N.D. Ind. 2013) ("Misener is correct that the ALJ never made any determination of Misener's probable rate of off-task time or absenteeism.  The government's response seems to be that we can infer from the ALJ's silence on the subject that he decided any portion of the evidence related to absenteeism or off-task time was not credible.  The Court will not decide whether that is a justifiable inference to draw or not, however, because there is a more obvious error in the record.  That said, the ALJ is encouraged

14

to use the remand as an opportunity to clarify how he accounted for off-task time and absenteeism in his RFC, as well."). The Court should not make sure inference. Rather, on remand, the ALJ should address the evidence of these moderate limitations related to absenteeism and time off task directly and include a proper analysis of the impact, if any, it has on Plaintiff's RFC.

### F. Treating source opinion

Finally, Plaintiff argues that the ALJ improperly gave only "little" weight to the opinion of treating physicians Dr. Sanjay Mishra; Dr. Michael Nichols, and Karen McNeely, LCSW. by claiming that the opinions were inconsistent with other evidence in the record but failed to explain how those opinions were inconsistent, and in giving only partial weight to the third-party report of Plaintiff's mother, Carol Anne Oakes. [Filing No. 20, at ECF p. 35-36.]

For claims filed before March 2017, "a treating source's opinion is entitled to controlling weight if it is supported by sound medical evidence and a consistent record." *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020). However, an ALJ may discredit the opinion of a treating source so long as he provides good reasons for doing so, such as that the opinion was inconsistent with other evidence in the record or not well supported by medical findings. *See, e.g., Burmester*, 920 F.3d at 412 ("The exclusion of the treating physicians was not unsupported in the ALJ opinion. Instead, the ALJ provided detailed reasons for his finding that the opinions of Dr. Bustos and Dr. Centena were not supported by the record."); *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("And though treating physician's opinions . . . are usually entitled to controlling weight, an ALJ may discredit the opinion if it is inconsistent with the record." (Internal citation omitted)).

15

Here, the ALJ briefly described the assessments completed by Dr. Mishra, Ronda Owens[3], ANP, and Dr. Nichols, function reports completed by Dr. Mishra in 2017 and 2018, and treatment records of Dr. Nichols from 2018. [Filing No. 14-2, at ECF p. 25.] However, the ALJ concluded:

> The undersigned finds that the treating clinician assessments and proposed restrictions are inconsistent with the evidence of record, which documents no clinical manifestations of considerable deficiency in executive function, thought processes or social function. Moreover, the longitudinal record details [Plaintiff's] history of ongoing participation in high-level daily activities, which demonstrate a greater level of function than the consultants assessed.

[Filing No. 14-2, at ECF p. 25.] While the ALJ has provided reasoning as to why she discounted the opinions of these treating sources, the reasoning is stated in a very general, broad format, with no citations to the "inconsistent" evidence of record. [Filing No. 14-2, at ECF p. 25.] On the other hand, Plaintiff's argument on this issue is extremely brief, and in some ways ironically fails to properly articulate the harm to Plaintiff from the ALJ's failure to elaborate on her reasoning. As a result, Plaintiff has not provided a sufficient argument to justify remanding on this issue. However, since remand is appropriate as previously described, the ALJ should also consider elaborating more in her discussion of Plaintiff's treating sources and how those opinions are inconsistent with the record.[4]

---

[3] Plaintiff does not raise any arguments directed to the ALJ's analysis of Owens' assessment.
[4] Plaintiff's argument as to the weight given to the third-party report completed by Plaintiff's mother, however, is unavailing. Plaintiff simply says, without any additional argument in support, "[t]he same holds true for the statement of the claimant's mother, Carol Oakes, who the ALJ dismisses as having a financial interest in the matter." [Filing No. 20, at ECF p. 26.] In fact, the ALJ explained that she gave Plaintiff's mother's testimony only partial weight because the evidence "does not fully support the assertions" and because the ALJ gave more weight to the findings and conclusions of the medical sources who she found to be more reliable in deciding a claim for disability. [Filing No. 14-2, at ECF p. 26.]

### IV. Conclusion

Plaintiff's request for remand [Filing No. 20] should be granted. While portions of the ALJ's decision adequately explain the reasoning behind the resulting RFC and findings, other portions fall short. On remand, the ALJ should elaborate on the paragraph C criteria and whether Plaintiff truly does not meet those areas. The ALJ should also address absenteeism or time off task and may wish to add additional reasoning to her analysis of the treating source opinions.

Any objection to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 5/17/2021 _____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email